United States District Court
Southern District of Texas
**ENTERED**
October 19, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **Criminal Action No. 7:25-CR-02302** |
| | § | |
| **RODOLFO CASTILLO and BERTHA ALICIA CASTILLO** | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Defendants Rodolfo Castillo and Bertha Alicia Castillo (collectively, "Defendants") are charged with fraudulently and knowingly exporting or attempting to export merchandise into Mexico that exceeds $2,500 in value; conspiracy to do the same; and conspiracy to commit money laundering. Defendant Bertha Alicia Castillo is also charged with knowingly encouraging and inducing unauthorized aliens to enter and reside in the United States and with employing aliens without authorization to work in the United States at Oro Ropa Usada, a business in McAllen, Texas.

Pending before the Court are Defendants' Motions to Dismiss Indictment. (Dkt. Nos. 95, 97). For the following reasons, the Court **DENIES** the Motions.

## I. BACKGROUND

On August 8, 2025, Homeland Security Investigations ("HSI") Special Agents contacted Defendant Rodolfo Castillo via WhatsApp to ask about his used-clothing business, Oro Ropa Usada. (7:25-CR-02302-2, Dkt. No. 1 at 2); (7:25-CR-02302-1, Dkt. No. 1 at 2). During that call, Rodolfo explained that he avoids reporting the entry of merchandise into Mexico to evade detection by authorities. (7:25-CR-02302-2, Dkt. No. 1 at 2); (7:25-CR-02302-1, Dkt. No. 1 at 2). He explained that he transports the merchandise

without proper authorization, or "codes," for the same reason. Likewise, he discussed making payments of up to 20,000 pesos to various parties—including corrupt Mexican officials—to facilitate uninterrupted transport. (Dkt. No. 1 at 2); (Dkt. No. 2 at 2). Rodolfo also shared that he compensates clients for merchandise seized during transport at a rate of 50%. (7:25-CR-02302-2, Dkt. No. 1 at 2); (7:25-CR-02302-1, Dkt. No. 1 at 2). He confirmed that he conducts this operation with his wife, Defendant Bertha Alicia Castillo, who manages sales while he oversees shipping. (7:25-CR-02302-2, Dkt. No. 1 at 2); (7:25-CR-02302-1, Dkt. No. 1 at 2).

On August 26, 2025, HSI Special Agents contacted Defendant Bertha Alicia Castillo via WhatsApp to discuss arrangements for a cash payment for the purchase and shipment of used clothing to Mexico. (7:25-CR-02302-2, Dkt. No. 1 at 2–3); (7:25-CR-02302-1, Dkt. No. 1 at 2–3). Bertha agreed to receive the cash payment at her warehouse, Oro Ropa Usada, and said that her husband Rodolfo would accompany her. (7:25-CR-02302-2, Dkt. No. 1 at 2–3); (7:25-CR-02302-1, Dkt. No. 1 at 3). Later that day, an undercover agent met with Defendants at Oro Ropa Usada and gave them $20,742 in cash to buy the used clothing and transport it into Mexico. (7:25-CR-02302-2, Dkt. No. 1 at 3); (7:25-CR-02302-1, Dkt. No. 1 at 3). Defendants accepted the money—Bertha placed it into a black handbag and took it to a residence in McAllen, Texas—and said that the clothing would be shipped to Mexico in about a week. (7:25-CR-02302-2, Dkt. No. 1 at 3); (7:25-CR-02302-1, Dkt. No. 1 at 3).

A week later, on September 2, 2025, HSI agents saw a black semi-tractor pulling a brown trailer depart Oro Ropa Usada and travel to the Pharr Port of Entry in Pharr, Texas.

(7:25-CR-02302-2, Dkt. No. 1 at 3–4); (7:25-CR-02302-1, Dkt. No. 1 at 3). The trailer was escorted by Rodolfo's black Jeep. (7:25-CR-02302-2, Dkt. No. 1 at 4); (7:25-CR-02302-1, Dkt. No. 1 at 3). U.S. Customs and Border Protection ("CBP") officers interdicted the semi-tractor and trailer as it attempted to exit the United States. (7:25-CR-02302-2, Dkt. No. 1 at 4); (7:25-CR-02302-1, Dkt. No. 1 at 3). The driver said he had been hired to pick up trailers of used clothing from Rodolfo at Oro Ropa Usada and drive them to Mexico for the past year and a half. (7:25-CR-02302-2, Dkt. No. 1 at 4); (7:25-CR-02302-1, Dkt. No. 1 at 3). The trailer's merchandise consisted of used clothing, motor oil, and food provided by Rodolfo. (7:25-CR-02302-2, Dkt. No. 1 at 4); (7:25-CR-02302-1, Dkt. No. 1 at 3). The driver did not possess documents authorizing the legal importation or exportation of the merchandise other than a form intended for presentation to Mexican customs that contained several discrepancies. (7:25-CR-02302-2, Dkt. No. 1 at 4); (7:25-CR-02302-1, Dkt. No. 1 at 3). He said that he was acting under Rodolfo's direction and disclosed that the merchandise had an approximate value of $250,000. (7:25-CR-02302-2, Dkt. No. 1 at 4); (7:25-CR-02302-1, Dkt. No. 1 at 3). In return, the driver stated that Defendants paid him 2,500 pesos per delivery. (7:25-CR-02302-2, Dkt. No. 1 at 4); (7:25-CR-02302-1, Dkt. No. 1 at 3). HSI Special Agents conducted a query of interagency databases to determine whether any exports had been properly declared by Oro Ropa Usada. (7:25-CR-02302-2, Dkt. No. 1 at 5). The query results showed that no documentation had been submitted to support legal exportation. (*Id.*).

Following this, HSI Special Agents conducted a non-custodial interview with Defendants at Oro Ropa Usada. (*Id.*); (7:25-CR-02302-1, Dkt. No. 1 at 3). Rodolfo stated

that he and his wife own the business and have been in the business of selling used clothes for around 20 years. (7:25-CR-02302-2, Dkt. No. 1 at 5). They usually ship clothing to Mexico two to four times a month, depending on the season. (*Id.*). He confirmed that the September 2, 2025, shipment originated from his warehouse and was intended for Mexico-based customers. (*Id.*); (7:25-CR-02302-1, Dkt. No. 1 at 3). Rodolfo also confirmed the contents of the trailer and stated that the approximate value of the merchandise was $75,000. (7:25-CR-02302-2, Dkt. No. 1 at 5); (7:25-CR-02302-1, Dkt. No. 1 at 3). When asked how his Mexican customers pay for the merchandise, Rodolfo replied that funds are wire transferred to McAllen and someone delivers the cash. (7:25-CR-02302-2, Dkt. No. 1 at 5); (7:25-CR-02302-1, Dkt. No. 1 at 3).

A few days later, Rodolfo spoke with HSI Special Agents again, admitting that he did not have any exportation documents for the September 2, 2025, shipment and that he had not provided any documentation to the driver. (7:25-CR-02302-2, Dkt. No. 1 at 5–6); (7:25-CR-02302-1, Dkt. No. 1 at 4). He acknowledged his familiarity with the Shipper's Export Declaration ("SED") form and its requirements. (7:25-CR-02302-2, Dkt. No. 1 at 6); (7:25-CR-02302-1, Dkt. No. 1 at 4). Rodolfo had previously completed SEDs with the assistance of a broker but did not do so with the detained shipment because he believed the responsibility for filing the required documentation rested with his Mexican customers. (7:25-CR-02302-2, Dkt. No. 1 at 6); (7:25-CR-02302-1, Dkt. No. 1 at 4). HSI later identified a total of 158 SEDs filed by or on behalf of Oro Ropa Usada, reflecting consistent export activity over 12 years. (7:25-CR-02302-2, Dkt. No. 1 at 6); (7:25-CR-02302-1, Dkt. No. 1 at 4).

On October 2, 2025, HSI Special Agents executed a search warrant at Oro Ropa Usada in McAllen, Texas. (7:25-CR-02302-2, Dkt. No. 1 at 6). At that time, the agents identified several employees present at the business who lacked authorization to work in the United States. (*Id.*). Two were Mexican nationals who were not lawfully admitted for permanent residence and lacked authorization to work in the United States. A third Mexican national held only a border-crossing card, which allowed him to cross the border but not to work in the United States. (*Id.* at 6–7). The employees stated that Bertha paid them in cash on a weekly basis but that she had hired them without asking for documentary proof of work authorization. (*Id.*).

Defendants were arrested on October 2 and 3, 2025. On October 28, 2025, a grand jury returned an indictment charging them with one count of conspiring to commit offenses against the United States; one count of fraudulently and knowingly exporting and sending, or attempting to export and send, merchandise valued at more than $2,500 to the United Mexican States; and one count of conspiracy to commit money laundering in violation of 18 U.S.C. §§ 371, 554(a), 2, and 1956(h). (Dkt. No. 17 at 1–4). Defendant Bertha Alicia Castillo was also charged with three counts of encouraging and inducing an alien to come to, enter, and reside in the United States; one count of conspiring, confederating, and agreeing to do the same; and one count of engaging in a pattern or practice of knowingly hiring or continuing to employ unauthorized aliens in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iv), 1324(a)(1)(A)(v)(I), 1324a(a)(1)(A), 1324a(a)(2), and 1324a(f)(1). (*Id.* at 4–6). On March 3, 2026, a grand jury returned a Superseding Indictment ("the Indictment") that added Notices of Criminal Forfeiture under 8 U.S.C.

§ 1324(b)(1); 18 U.S.C. §§ 982(a)(1), (a)(6)(A); 19 U.S.C. § 1595a(d); and 28 U.S.C. § 2461. (Dkt. No. 82 at 6–7).

Both Defendants filed Motions to Dismiss the Indictment, (Dkt. Nos. 95, 97), and Defendant Bertha Alicia Castillo filed several pretrial memoranda, (Dkt. Nos. 98–100), that Defendant Rodolfo Castillo moved to adopt, (Dkt. No. 101). The Government filed a global response addressing each of the Motions. (Dkt. No. 103). Defendants filed a Reply. (Dkt. No. 104).

## II. LEGAL STANDARD

"The purpose of an indictment is 'to allege each essential element of the offense charged so as to enable the accused to prepare his defense and to allow the accused to invoke the double jeopardy clause in any subsequent proceeding.'" *United States v. Lawrence*, 727 F.3d 386, 397 (5th Cir. 2013) (quoting *United States v. Cluck*, 143 F.3d 174, 178 (5th Cir. 1998)). An indictment is sufficient if it "contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend." *Id.* When determining whether an indictment states an offense, "the court is required to take the allegations of the indictment as true and to determine whether an offense has been stated." *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011) (quoting *United States v. Crow*, 164 F.3d 229, 234 (5th Cir. 1999)). Rule 7(c)(1) of the Federal Rules of Criminal Procedure states that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." "An indictment is sufficient if it (1) contains the elements of the offense charged and fairly informs a defendant of the charge against him and (2) enables him to plead an acquittal or

conviction in bar of future prosecutions for the same offense." *United States v. Montemayor*, 703 F.2d 109, 117 (5th Cir. 1983).

## III. DISCUSSION

### A. CORPORATE RESPONSIBILITY

As a threshold matter, Defendants argue that the Indictment improperly charges them based on acts attributable to Oro Ropa Usada rather than to them individually. (Dkt. No. 95 at 2–3); (Dkt. No. 97 at 2–3). According to them, because Oro Ropa Usada is a limited liability company ("LLC") and because their actions related to the September 2, 2025, exportation attempt were done on behalf of Oro Ropa Usada, the Government should have charged the LLC instead, absent allegations sufficient to pierce the corporate veil. (Dkt. No. 95 at 2–3); (Dkt. No. 97 at 2–3). Moreover, they assert that Oro Ropa Usada is the "United States Principal Party in Interest" ("USPPI") that has an obligation under 13 U.S.C. § 305 to file export documentation, including SEDs. (Dkt. No. 95 at 2–3); (Dkt. No. 97 at 2–3).

The Government responds that the Indictment need not pierce the corporate veil because that doctrine is a civil principle and has no bearing on criminal proceedings. (Dkt. No. 103 at 7–8) (quoting *United States v. Bello*, No. 4:23-CR-00136, 2024 WL 5319688, at *2 (E.D. Tex. Dec. 12, 2024), *report and recommendation adopted,* 2025 WL 33465 (E.D. Tex. Jan. 6, 2025)). That the Indictment charges Defendants with violating federal law is enough for this Court to possess subject-matter jurisdiction. (*Id.*). Defendants reply that this "refut[es] an argument Defendants never made" as they do not contest the Court's jurisdiction, but rather the adequacy of the Indictment. (Dkt. No. 104 at 8).

The Court finds Defendants' arguments unconvincing. Although the Court agrees that the Government responds to a jurisdictional argument Defendants did not make, Defendants' corporate-veil argument is likewise misplaced. Texas law generally shields LLC members from the LLC's liabilities and obligations, *see* Tex. Bus. Orgs. Code § 101.114, but that provision does not immunize members from personal criminal liability for their own conduct. In *United States v. Wise*, the Supreme Court held that a corporate officer may be prosecuted when he knowingly participates in unlawful conduct, regardless of whether he acts in a representative capacity. 370 U.S. 405, 416, 82 S.Ct. 1354, 1361, 8 L.Ed.2d 590 (1962). Thus, the Government need not pierce the corporate veil to prosecute Defendants for conduct for which federal law makes them individually criminally responsible. Corporate ownership or office alone, however, does not establish such responsibility; the Government must prove the elements necessary to hold each Defendant liable under the charged offenses and any applicable theory of liability.

In any event, the federal statutes under which Defendants are charged are not limited to corporate entities. Section 371 applies when "two or more persons" conspire to commit an offense against the United States. 18 U.S.C. § 371. Section 305 applies to "[a]ny person" who knowingly fails to file or knowingly submits false or misleading export information. 13 U.S.C. § 305(a)(1). Section 554 applies to "[w]hoever" fraudulently or knowingly engages in the prohibited export conduct. 18 U.S.C. § 554(a). Section 1956(h) applies to "[a]ny person" who conspires to commit an offense defined in Section 1956. 18 U.S.C. § 1956(h). Likewise, Sections 1324(a)(1)(A)(iv) and (v)(I) apply to "[a]ny person," and Section 1324a(f)(1) imposes criminal penalties on "[a]ny person or

entity" that engages in a pattern or practice of violations of Sections 1324a(a)(1)(A) or (a)(2). 8 U.S.C. §§ 1324(a)(1)(A)(iv), (v)(I), 1324a(f)(1). Accordingly, the fact that Oro Ropa Usada may itself qualify as a person or entity does not, by itself, preclude Defendants' prosecution. Defendants' separate argument that Oro Ropa Usada, as the USPPI, bore the relevant filing obligation concerns the sufficiency of the charges rather than corporate immunity and is addressed below.

### B. COUNTS 1 AND 2

Defendants make several arguments that Counts 1 and 2 of the Indictment are insufficient or erroneous, (*see* Dkt. No. 95 at 4–5); (Dkt. No. 97 at 3–4); (Dkt. Nos. 98–100), which the Court addresses in turn.

#### 1. <u>Insufficient Factual Detail</u>

First, Defendants argue that Count 1 is insufficient because it fails to allege specific factual predicates supporting the charges. (Dkt. No. 95 at 4); (Dkt. No. 97 at 3–4). Specifically, the Indictment does not allege (1) "that either defendant had a duty to file an [Automated Export System (AES)] Transmission with respect to the seized shipment," (2) "what [Defendants] personally did with respect to the LLC to cause the LLC to fail to file the EEI," or (3) "that the goods seized belonged to Oro Ropa, LLC or to either defendant personally." (Dkt. No. 95 at 4); (Dkt. No. 97 at 3–4). The Government responds that the Indictment need not include such granular factual detail. (Dkt. No. 103 at 9).

The Government is correct. "An indictment need not list every particular of the offense." *United States v. Richard*, 775 F.3d 287, 292 (5th Cir. 2014). An indictment is "generally sufficient 'when the charge tracks the governing statute as long as the

statutory language unambiguously sets forth all essential elements.'" *United States v. Moody*, 923 F.2d 341, 351 (5th Cir. 1991) (quoting *United States v. Beebe*, 792 F.2d 1363, 1366 (5th Cir. 1986)); *see also United States v. Thomas*, 348 F.3d 78, 82 (5th Cir. 2003); *United States v. Massey*, 849 F.3d 262, 264 (5th Cir. 2017). "[I]t need not set out the 'evidentiary details by which the government plans to establish' the defendant's guilt." *Moody*, 923 F.2d at 351 (quoting *United States v. Gordon*, 780 F.2d 1165, 1172 (5th Cir. 1986)).

When an indictment charges a defendant with conspiracy, it "need not allege every overt act committed in furtherance of the conspiracy." *United States v. Lam Lek Chong*, 544 F.2d 58, 63 (2d Cir. 1976) (citing *Wong Tai v. United States*, 273 U.S. 77, 81, 47 S.Ct. 300, 302, 71 L.Ed. 545 (1927)). Courts have upheld conspiracy indictments that "track the language of a statute and, in addition, do little more than state time and place in approximate terms." *Id.*; *see also United States v. Bragg*, No. 91-7044, 1992 WL 366674, at *3 (5th Cir. Nov. 30, 1992) (unpublished) ("[W]e measure the sufficiency of the indictment with regard to the elements of a conspiracy to violate federal law rather than with regard to the elements [of the underlying crime].").

Count 1 tracks the language of 18 U.S.C. § 371 and alleges that Defendants conspired to commit violations of 13 U.S.C. § 305 and 18 U.S.C. § 554. (Dkt. No. 82 at 2–3). It also lists the time and place that the conspiracy allegedly occurred: "Beginning on or about August 8, 2025, and continuing until on or about October 2, 2025, in the Southern District of Texas and elsewhere. . . ." (*Id.*). It also alleges overt acts committed in furtherance of the conspiracy, including the September 2, 2025, attempted export of merchandise without the required export documentation. (*Id.*). These allegations

provide enough information to apprise Defendants of the charges against them and to allow them to prepare a competent defense. Defendants' argument therefore fails.

**2. <u>Section 554's Predicate Offense Requirement</u>**

Second, Defendants argue that the acts alleged in the Indictment do not constitute a violation of 18 U.S.C. § 554 because that statute requires an additional substantive law that prohibits or restricts the exportation of the particular goods at issue. (*See* Dkt. No. 98). The failure to file certain export documents alone is insufficient to establish a violation of Section 554 according to them because the exported "merchandise, article, or object" itself must be "contrary to any law or regulation of the United States." (*Id.*).

The Government responds that the charged predicate offense—knowingly failing to file SED export information in violation of 13 U.S.C. § 305 and 15 C.F.R. § 30.1—is sufficient to establish a violation of Section 554. (Dkt. No. 103 at 8–9). Section 554's "contrary to any law or regulation" requirement, according to the Government, requires only that the exportation of the goods be contrary to law, not that the goods themselves be prohibited or restricted. (*Id.*). Because the Indictment alleges that Defendants knowingly failed to file export information, it is immaterial whether the clothing, motor oil, and food could lawfully be exported. (*Id.*).

The Court agrees with the Government. Section 554 states:

> Whoever fraudulently or knowingly exports or sends from the United States, or attempts to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise, article or object, prior to exportation, knowing the same to be

> intended for exportation contrary to any law or regulation of the United States, shall be fined under this title, imprisoned not more than 10 years, or both.

18 U.S.C. § 554. The phrase "contrary to any law or regulation" as used in Section 554 refers not only to the lawfulness of the goods themselves, but also to the process of exporting goods, regardless of whether the goods themselves may lawfully be exported. This is illustrated by the second clause of the statute, which makes it a crime to buy, sell, or facilitate the sale of certain goods, among other acts, knowing that the goods are "intended for exportation contrary to any law or regulation of the United States." 18 U.S.C. § 554(a). While the "contrary to any law or regulation" language in the first clause is immediately preceded by a list of goods—"any merchandise, article, or object"—the language must be read in conformity with its use in the second clause. *See Horton v. Bank One, N.A.*, 387 F.3d 426, 435 (5th Cir. 2004) ("[I]dentical words used in different parts of the same act are intended to have the same meaning.") (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 570, 115 S.Ct. 1061, 1067, 131 L.Ed.2d 1 (1995)) (emphasis omitted); *see also* Antonin Scalia & Bryan Garner, Reading Law: The Interpretation of Legal Texts 170 (2012) ("A word or phrase is presumed to bear the same meaning throughout a text."). So, the first clause is best read as requiring the exportation to be "contrary to any law or regulation" in accordance with the second clause. While this would encompass the exportation of illicit goods, as Defendants assert, it is not exclusive to that scenario. Accepting Defendants' reading of the language would require the Court to give a different meaning to the same phrase used in the same statutory provision. The Court cannot accept such a reading.

Nevertheless, Defendants argue that the Indictment would still be insufficient under this reading of Section 554 because 13 U.S.C. § 305 and 15 C.F.R. § 30.1[1] cannot serve as the necessary predicate offenses. (Dkt. No. 99). In their view, because Section 305 is a "statistical reporting obligation" as opposed to an "export-control statute" and because Title 13 "already contains its own calibrated criminal penalty scheme," it cannot be used to satisfy the "contrary to any law or regulation" language. (*Id.*).

The Court is not convinced. Defendants repeatedly argue that "contrary to law" is a "borrowing element" taken from 18 U.S.C. § 545—the importation equivalent of 18 U.S.C. § 554—that requires "some external law" forbidding the moving of certain goods. (*Id.* at 3, 5–6). This means that "[a] failure to comply with a post hoc reporting obligation [—like 13 U.S.C. § 305—] does not retroactively render the underlying transaction unlawful." (*Id.* at 6). But the Foreign Trade Regulations generally require EEI to be filed before exportation. *See* 15 C.F.R. § 30.2(b)(1). For truck cargo, the USPPI or authorized agent generally must file the required EEI and obtain the AES Internal Transaction Number no later than one hour before the truck arrives at the United States border to go foreign. *See id.* § 30.4(b)(2)(iii). Thus, the filing obligation relevant here is not necessarily the "post hoc" requirement Defendants describe. To reach their broader conclusion,

---

[1] Section 30.1 principally supplies definitions used in the Foreign Trade Regulations and does not itself impose the operative EEI filing requirement. *See* 15 C.F.R. § 30.1. The general filing requirement appears in Section 30.2, the responsibilities of parties to an export transaction are addressed in Section 30.3, and filing deadlines appear in Section 30.4. *See id.* §§ 30.2–30.4. The Court therefore does not rely on Section 30.1 as an independent predicate for Section 554.

however, Defendants ignore the plain text of Section 554. While it is true that Sections 554 and 545 are sister statutes that closely mirror each other, there is a notable difference between the two: the "contrary to law" language. Section 545 criminalizes importation that is "contrary to law" while Section 554 criminalizes exportation that is "contrary to *any* law *or regulation of the United States*." 18 U.S.C. §§ 545, 554(a) (emphasis added). This difference suggests a distinct meaning—that is, that Section 554's language is broader than Section 545's and expressly encompasses both federal laws and federal regulations. *See* Scalia & Garner, *supra*, at 170 ("[A] material variation in terms suggests a variation in meaning.").

Given this unambiguous language, Defendants face an uphill battle in asserting that 13 U.S.C. § 305—a law of the United States—does not qualify as a Section 554 predicate. That Section 305 is a "statistical reporting obligation" does little to move the needle. Section 554's predicate offense requirement is not limited only to "substantive trade regulation[s]," as Defendants claim, (Dkt. No. 99 at 4–6); its text does not limit predicate laws or regulations to those prohibiting the exportation of particular goods. The relevant question is whether the alleged violation rendered the exportation contrary to federal law or regulation. Defendants point to no case in which a court has held that 13 U.S.C. § 305 or any other "statistical reporting obligation" statute does not qualify as a predicate offense under Section 554. Instead, they cite to *Keck v. United States*, 172 U.S. 434, 19 S.Ct. 254, 43 L.Ed. 505 (1899); *Babb v. United States*, 218 F.2d 538 (5th Cir. 1955); and *United States v. Alghazouli*, 517 F.3d 1179 (9th Cir. 2008), none of which support their arguments.

*Keck* involved a prosecution under R.S. § 3082, a predecessor to the second paragraph of Section 545,[2] in which an indictment failed to allege the legal requirement that made the importation "contrary to law." 172 U.S. at 437, 19 S.Ct. at 254–55. The Supreme Court found that this failure invalidated the charge "because importing merchandise [is] not per se contrary to law, and could only become so when done in violation of specific statutory requirements." *Id.* ("[T]he indictment, in repeating [R.S. § 3082's] language without averments disclosing the particulars of the offense, states no matter upon which issue could be formed for submission to a jury.") (internal quotation marks omitted). That case is different from the current one because this Indictment alleges a predicate offense that made the exportation of the goods at issue contrary to law: Section 305.

Similarly, the Fifth Circuit in *Babb* held that an indictment that charged a defendant under Section 545 for importing cattle contrary to law was insufficient because it failed to allege facts showing that the cattle had been imported contrary to law. 218 F.2d at 539–41. Following this ruling, the Government brought additional Section 545 charges against the same defendant, this time alleging a violation of 19 U.S.C. § 1484, which stated that "the consignee of imported merchandise shall make entry therefor either in person or by an agent authorized by him in writing." *Babb v. United States*, 252 F.2d 702, 703–04 (5th Cir. 1958). This time, the Fifth Circuit upheld the defendant's conviction, holding that "the failure to make entry for the cattle as required by [19 U.S.C. § 1484(a)] was a clear

[2] R.S. § 3082, the provision at issue in *Keck*, was later codified in the second paragraph of 18 U.S.C. § 545. *See Babb v. United States*, 218 F.2d 538, 540 (5th Cir. 1955).

violation of law which comes within the usual and ordinary meaning of the words, 'contrary to law.'" *Id.* at 707. Like the entry requirement at issue in *Babb*, the export-information requirement enforced through Section 305 concerns the manner in which goods cross the border rather than prohibiting the goods themselves. Contrary to Defendants' assertions, *Babb* supports the proposition that a filing requirement such as the one enforced through Section 305 may serve as a predicate offense under Section 554.

*Alghazouli* likewise doesn't help the Defendants. The Ninth Circuit held that the word "law" in Section 545 does not include regulations, relying in part on Section 554's inclusion of the phrase "law or regulation." *Alghazouli*, 517 F.3d at 1186–87. Ultimately, the Ninth Circuit found that a regulation may constitute a "law" under Section 545 "only if there is a statute . . . that specifies that violation of that regulation is a crime." *Id.* at 1187. Again, this case provides no support: Section 305 is not a regulation, it is a law of the United States. And, as discussed above, the Indictment alleges that Defendants' knowing failure to file required export information under Section 305 rendered the exportation contrary to federal law.

**3. <u>Vagueness Challenge to Section 305</u>**

Defendants' final challenge to Counts 1 and 2 is a vagueness challenge to 13 U.S.C. § 305. In Defendants' view, enforcement of Section 305 will be arbitrary and subject to executive discretion, because Section 305(a)(1)—the criminal provision—and Section 305(b)—the civil provision—are nearly identical except for the criminal subsection's scienter requirement and the potential for imprisonment. (Dkt. No. 100). Further, Defendants argue that "most non-trivial AES filing violations involve some degree of

knowledge," and therefore, "the scienter modifier does not, in operation, function as a meaningful sorting line." (*Id.* at 4). The Government's Response does not address this issue. (*See* Dkt. No. 103).

Nevertheless, the Court cannot accept Defendants' argument. "The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). The Supreme Court has recognized that the second requirement—that a legislature establish minimal guidelines to govern law enforcement—is the more important aspect of the vagueness inquiry. *Id.* at 358, 103 S.Ct. at 1858. "Where the legislature fails to provide such minimal guidelines, a criminal statute may permit 'a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.'" *Id.* (quoting *Smith v. Goguen*, 415 U.S. 566, 575, 94 S.Ct. 1242, 1248, 39 L.Ed.2d 605 (1974)). This requirement applies "not only to statutes defining elements of crimes, but also to statutes fixing sentences." *Johnson v. United States*, 576 U.S. 591, 596, 135 S.Ct. 2551, 2557, 192 L.Ed.2d 569 (2015). Further, because non-First Amendment vagueness challenges "must be examined in the light of the facts of the case at hand," Defendants "must show that the statute is vague *in [their] case*." *United States v. Branson*, 139 F.4th 475, 478 (5th Cir. 2025) (first quoting *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 495 n.7, 102 S.Ct. 1186, 1191 n.7, 71 L.Ed.2d 362 (1982); and then quoting *United States v. Clark*, 582 F.3d 607, 614 (5th Cir. 2009) (emphasis in original)).

The criminal provision of 13 U.S.C. § 305 states:

> Any person who knowingly fails to file or knowingly submits false or misleading export information through the Shipper's Export Declaration (SED) (or any successor document) or the Automated Export System (AES) shall be subject to a fine not to exceed $10,000 per violation or imprisonment for not more than 5 years, or both.

13 U.S.C. § 305(a)(1).

The civil provision states:

> The Secretary . . . may impose a civil penalty not to exceed $10,000 per violation on any person violating the provisions of this chapter or any rule, regulation, or order issued thereunder, except as provided in section 304. Such penalty may be in addition to any other penalty imposed by law.

*Id.* § 305(b). The Foreign Trade Regulations also define a "civil penalty." *See* 15 C.F.R. § 30.1, which defines the term as:

> A monetary penalty imposed on a USPPI, authorized agent, FPPI, carrier, or other party to the transaction for violating the FTR, including failing to file export information, filing false or misleading information, filing information late, and/or using the AES to further any illegal activity, and/or violating any other regulations of this part.

15 C.F.R. § 30.1.

Under the first vagueness prong, Section 305 adequately identifies the conduct subject to criminal penalties. To violate the criminal provision, a defendant must "knowingly fail[] to file or knowingly submit[] false or misleading export information through the [SED] or the [AES]." 13 U.S.C. § 305(a)(1). The statute thus expressly identifies the conduct giving rise to criminal liability: knowingly failing to file required export information or knowingly submitting false or misleading export information

through the SED or AES. That it includes a scienter requirement helps to mitigate the provision's vagueness because it ensures that a defendant has notice that his conduct is proscribed. *Vill. of Hoffman Ests.*, 455 U.S. at 499, 102 S.Ct. at 1193 ("[T]he Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed.").

Under the second, and more important prong, Section 305 does not encourage arbitrary and discriminatory enforcement. Defendants argue that Section 305's similar criminal and civil provisions fail to establish minimal guidelines to prevent arbitrary and discriminatory enforcement between the two provisions. (Dkt. No. 100 at 8–10). This argument fails, however, because the criminal and civil provisions do not impose identical elements or liability standards. Enforcement of the criminal provision requires proof of an element—that Defendants *knowingly* failed to file required export information—that the civil provision does not. *See* 13 U.S.C. §§ 305(a)(1), (b); *see also United States v. Ross*, 948 F.3d 243, 247–48 (5th Cir. 2020) (holding that separate statutes criminalizing receipt and possession of child pornography were not vague in part because they did not require proof of identical elements). While Defendants claim that the scienter requirement is a "de minimis" distinction that rarely makes a difference in commercial practice or in "non-trivial AES filing violations," they provide no authority for this proposition. (Dkt. No. 100 at 3–4). Nor do they point to any authority stating that it is impermissible for criminal and civil statutory provisions to proscribe the same conduct.

In any event, Defendants' argument that their alleged conduct subjects them to both the civil and criminal provisions is immaterial because "[such overlap] is unremarkable and has no bearing on whether the statute is unconstitutionally vague." *Ross*, 948 F.3d at 247–48 (quoting *United States v. Watzman*, 486 F.3d 1004, 1010 (7th Cir. 2007)). Even if the two provisions concerned identical conduct, there still would not be a vagueness issue because "there is no appreciable difference between the discretion a prosecutor exercises when deciding whether to charge under one of two statutes with different elements and the discretion he exercises when choosing one of two statutes with identical elements." *United States v. Batchelder*, 442 U.S. 114, 125, 99 S.Ct. 2198, 2205, 60 L.Ed.2d 755 (1979). "Once a prosecutor determines the evidence supports both offenses' elements, he has discretion to charge defendant with either (or both), subject to the constraint that his choice not be the product of discriminatory animus." *Ross*, 948 F.3d at 248–49. Although *Ross* and *Batchelder* involved overlapping criminal provisions, their reasoning reinforces that overlap itself does not render a statute unconstitutionally vague. That is especially true here because Section 305 specifies the additional scienter required for criminal liability and expressly provides that a civil penalty "may be in addition to any other penalty imposed by law." 13 U.S.C. § 305(b). The fact that Defendants' alleged conduct may subject them to both civil and criminal consequences therefore does not render Section 305 unconstitutionally vague.

Further, Defendants are incorrect that the provisions impermissibly leave it to executive discretion to fix criminal penalties. Congress defined the conduct subject to criminal liability and fixed the permissible civil and criminal penalties under Section 305.

*See* 13 U.S.C. §§ 305(a)(1), (b). The Executive's discretion to pursue civil or criminal enforcement therefore does not give it authority to define the prohibited conduct or fix the available penalties. *See United States v. Batchelder*, 442 U.S. 114, 126, 99 S.Ct. 2198, 2205, 60 L.Ed.2d 755 (1979) (explaining that overlapping provisions "plainly demarcate the range of penalties that prosecutors and judges may seek and impose"). Such discretion does not make the statute unconstitutionally vague. *See Ross*, 948 F.3d at 247 ("[I]t goes without saying that prosecutors routinely decide to charge defendants with certain offenses, instead of others, based on the evidence available to meet the requisite elements.").

Accordingly, the Court finds that Counts 1 and 2 of the Indictment are sufficient and denies Defendants' Motions as to those Counts.

### C. COUNT 3

Count 3 charges Defendants under 18 U.S.C. § 1956(h) with conspiring to commit international promotional and concealment money laundering in violation of 18 U.S.C. § 1956(a)(2)(A) and (B)(i). (Dkt. No. 82 at 3–4). Defendants contest the validity of this count by making three arguments: (1) the Indictment fails to state an essential element of the money-laundering charge—that is, "that the funds involved in the alleged financial transaction must constitute proceeds of some form of illegal activity;" (2) the Supreme Court's decision in *Cuellar v. United States*, 553 U.S. 550, 128 S.Ct. 1994, 170 L.Ed.2d 942 (2008) and the Fifth Circuit's decision in *United States v. McGuire*, 163 F.4th 882, 915 (5th Cir. 2025) require the Indictment to state "that concealment of a listed attribute was the purpose of the transportation [of monetary instruments and funds]—not merely that the

funds were hidden away during transit;" and (3) the Indictment improperly alleges both the promotional and concealment objects of 18 U.S.C. § 1956(a)(2), under subsections (A) and (B)(i), respectively, presenting a duplicity issue. (Dkt. No. 95 at 5–6); (Dkt. No. 97 at 4–5). The Government responds—similar to its Response to Count 1—that Defendants ask too much of the Indictment and argues that it need not include the "granular factual detail" that Defendants suggest. (Dkt. No. 103 at 9–11).

The Court is unpersuaded by Defendants' arguments. First, Defendants' argument regarding proceeds conflates the two substantive offenses alleged as objects of the conspiracy. Section 1956(a)(2)(A) prohibits the international transportation, transmission, or transfer of funds with the intent to promote the carrying on of specified unlawful activity; it does not require that the funds themselves constitute proceeds of unlawful activity. Section 1956(a)(2)(B)(i), by contrast, requires that the defendant know that the funds involved represent the proceeds of some form of unlawful activity and know that the transportation, transmission, or transfer is designed in whole or in part to conceal or disguise a listed attribute of the proceeds. *See* 18 U.S.C. § 1956(a)(2)(A), (B)(i). Count 3 alleges both objects. It alleges that Defendants conspired to transport, transmit, or transfer from a place in the United States to a place outside the United States with the intent to promote the smuggling of goods from the United States, and it separately alleges that they knew the funds represented proceeds of unlawful activity and knew that the transportation, transmission, or transfer was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of those proceeds. (Dkt. No.

82 at 3–4). These allegations track the respective statutory requirements.[3] To the extent Defendants contend that the concealment object fails because the funds came from undercover agents rather than from unlawful activity, Section 1956(a)(2) expressly provides that, for an offense under subparagraph (B), the defendant's knowledge may be established by proof that a law-enforcement officer represented the matter specified in subparagraph (B) as true and that the defendant's subsequent statements or actions indicated that the defendant believed the representation to be true. The undercover origin of the funds therefore does not itself defeat the charge. If the Government relies on this statutory means of establishing knowledge, it must prove the required representation and Defendants' demonstrated belief in it. At the pleading stage, however, Count 3 need not set out the evidence by which the Government intends to prove the alleged knowledge.

Second, *Cuellar* and *McGuire* do not support dismissal. *Cuellar* addressed the sufficiency of the evidence supporting an international concealment-money-laundering conviction under Section 1956(a)(2)(B)(i). *McGuire* applied *Cuellar*'s interpretation of materially similar language in reviewing the evidentiary sufficiency of domestic concealment-money-laundering and related conspiracy convictions. Those decisions establish that, for concealment money laundering, concealment or disguise of a listed attribute must be a purpose of the transportation, transmission, or transfer—not merely

---

[3] Section 1956(h) does not make an overt act an element of a money-laundering conspiracy. *Whitfield v. United States*, 543 U.S. 209, 214, 125 S.Ct. 687, 691, 160 L.Ed.2d 611 (2005). Count 3 nevertheless identifies the alleged objects of the agreement and alleges the mental states required by Sections 1956(a)(2)(A) and (B)(i).

a consequence of the manner in which the funds are moved. *See Cuellar*, 553 U.S. at 563–67, 128 S.Ct. at 2003–05; *McGuire*, 163 F.4th at 915. But neither decision holds that an indictment must plead the evidentiary facts demonstrating that purpose. Here, the Indictment alleges that "the transportation, transmission, or transfer [of funds] is designed in whole or in part to conceal or disguise the nature . . . of the proceeds of said specified unlawful activity." (Dkt. No. 82 at 4). Because "designed" in this context refers to the purpose or intended aim of the transportation, *Cuellar*, 553 U.S. at 563, 128 S.Ct. at 2003, the Indictment alleges the requisite concealment purpose. It need not allege the evidence by which the Government intends to prove that allegation.

Finally, the Indictment does not fail because it charges a single conspiracy with both international promotional and international concealment money laundering as objects. "The allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for the conspiracy is the crime . . . however diverse its objects." *United States v. Mauskar*, 557 F.3d 219, 225 (5th Cir. 2009) (quoting *United States v. Cooper*, 966 F.2d 936, 939 (5th Cir. 1992)). "That an indictment alleges more than one means by which conspirators sought to accomplish a scheme does not render it duplicitous." *Id.* (quoting *United States v. McDermot*, No. 93-3603, 1995 WL 371036, at *4 (5th Cir. June 5, 1995)). Defendants are not charged with multiple crimes in the same count; they are charged with one crime, conspiracy, with multiple alleged objects. The inclusion of both objects does not render Count 3 duplicitous.

Accordingly, the Court finds that Count 3 of the Indictment is sufficient and denies Defendants' Motions as to that Count.

### D. Counts 4–7

Next, Defendant Bertha Alicia Castillo argues that Counts 4–7—charging her with violating 8 U.S.C. § 1324(a)(1)(A)(iv) (Counts 5–7) and 8 U.S.C. § 1324(a)(1)(A)(v)(I) (Count 4)—are unconstitutionally vague and lack specificity. (Dkt. No. 95 at 6–7). According to her, because the Counts are just restatements of Sections 1324(a)(1)(A)(iv) and (v)(I) and do not provide any factual basis for the charges, she is unable to prepare her defense. (*Id.*). Further, she argues that Section 1324(a)(1)(A)(iv) requires proof of knowledge and intent, elements that are absent from the Indictment. (*Id.*). She also argues that "mere employment"—the conduct she contends underlies Counts 4–7—does not violate Section 1324(a)(1)(A)(iv). (*Id.*).

The Court is unpersuaded. Counts 5–7 are restatements of Section 1324(a)(1)(A)(iv), alleging that Bertha Alicia Castillo "did encourage and induce an alien . . . to come to, enter and reside in the United States, knowing and in reckless disregard of the fact that such coming to, entry and residence in the United States was in violation of law." (Dkt. No. 82 at 4–5). As the Supreme Court has construed this language, it requires that a defendant intentionally encourage or induce an alien—in the specialized criminal-law sense of solicitation or facilitation—to come to, enter, or reside in the United States, while knowing or recklessly disregarding that such coming to, entry, or residence is or will be in violation of law. Further, each of Counts 5–7 names an alleged alien that the Government believes Castillo encouraged and induced to enter or reside in the United States. (*Id.*). Listing these names provides Castillo with a factual basis sufficient to allow her to prepare a defense.

Castillo's arguments that the Indictment is unduly vague because it does not allege a knowledge or intent element or acts beyond "mere employment" also fail. The Supreme Court has clarified that the "encourages or induces" language of Section 1324(a)(1)(A)(iv) incorporates the essential *mens rea* requirement.

> [T]here is a simple explanation for why "encourages or induces" is not modified by an express *mens rea* requirement: There is no need for it. At the risk of sounding like a broken record, "encourage" and "induce," as terms of art, carry the usual attributes of solicitation and facilitation—including, once again, the traditional *mens rea*. . . . [T]he omission of the unnecessary modifier is certainly not enough to overcome the "presumption of scienter" that typically separates wrongful acts "from 'otherwise innocent conduct.'"

*United States v. Hansen*, 599 U.S. 762, 780, 143 S.Ct. 1932, 1945, 216 L.Ed.2d 692 (2023) (quoting *Ruan v. United States*, 597 U.S. 450, 458, 142 S.Ct. 2370, 2377, 213 L.Ed.2d 706 (2022)). Thus, specific intent is an element of the offense, but the Indictment need not separately recite that intent requirement because the terms "encourage" and "induce" themselves incorporate the traditional intent associated with solicitation and facilitation.[4]

---

[4] Castillo's reference to the Ninth Circuit's decision in *United States v. Hansen*, 97 F.4th 677 (9th Cir. 2024) on remand from the Supreme Court is unavailing. (*See* Dkt. No. 104 at 5–6). There, the Ninth Circuit held that jury instructions that omitted the specific intent element discussed by the Supreme Court were erroneous. *Hansen*, 97 F.4th at 679–81. That decision confirms that specific intent is an element of the offense, but it does not require an indictment to use the words "specific intent." Because the Supreme Court has construed "encourage" and "induce" as terms of art that themselves incorporate the traditional intent associated with solicitation and facilitation, the Indictment's allegation that Castillo "encourage[d] and induce[d]" the named aliens alleges that element. *See Hansen*, 599 U.S. at 778–80, 143 S.Ct. at 1943–45; *see also Moody*, 923 F.2d at 351.

The Government also need not allege the evidentiary details showing what conduct beyond mere employment constituted encouragement or inducement.[5] *Richard*, 775 F.3d at 292. As the Fifth Circuit has stated, "when the elements of Section 1324(a)(1)(A)(iv) are properly stated . . . they require 'a level of knowledge and intent beyond the mere employment of illegal aliens.'" *United States v. Anderton*, 901 F.3d 278, 284 (5th Cir. 2018) (quoting *United States v. Khanani*, 502 F.3d 1281, 1289 (11th Cir. 2007)). The Indictment properly states the essential elements of the offense by tracking the statutory language. As construed in *Hansen*, that language requires proof that Castillo specifically intended to solicit or facilitate the alleged aliens' unlawful coming to, entry, or residence in the United States, in addition to the statutory requirement that she knew or recklessly disregarded that such coming to, entry, or residence was or would be in violation of law. Further factual allegations are not required.[6]

---

[5] The Court notes that it previously ruled in an unrelated case that mere employment was sufficient to constitute a violation of Section 1324(a)(1)(A)(iv). *See United States v. Mendoza-Martinez*, 7:25-CR-02462, 2026 WL 523488, at *3 (S.D. Tex. Feb. 25, 2026). The Court now believes that ruling was in error. *See United States v. Anderton*, 901 F.3d 278, 284 (5th Cir. 2018). Nevertheless, the relevant counts in that case were still sufficient as, like Counts 5–7 here, they tracked the language of Section 1324(a)(1)(A)(iv), and therefore, stated all essential elements of the offense—including the specific intent incorporated by the terms "encourage" and "induce".

[6] Castillo also argues that the alleged aliens listed in Counts 5–7 were independent contractors, and therefore, she had no duty to verify their immigration status under the Immigration Reform and Control Act ("IRCA") or the E-Verify Supplemental Guide for Federal Contractors. (Dkt. No. 95 at 6–7). This is irrelevant to her challenge to Counts 5–7 because those Counts do not charge her with failing to verify immigration status under IRCA or the E-Verify Supplemental Guide. She is charged in Counts 5–7 with knowingly encouraging and inducing aliens to come to or reside in the United States in violation of 8 U.S.C. § 1324(a)(1)(A)(iv). To the extent Castillo argues that the Indictment fails to allege facts identifying the conduct that constituted encouragement and inducement, that argument also fails. *See Richard*, 775 F.3d at 292.

Castillo's arguments regarding the conspiracy charge in Count 4 likewise fail. Count 4 tracks the language of Section 1324(a)(1)(A)(v)(I) and alleges that Castillo conspired to commit violations of Section 1324(a)(1)(A)(iv). (Dkt. No. 82 at 4). It also lists the time and place that the conspiracy allegedly occurred: "From on or about October of 2022 until on or about October 2, 2025, in the Southern District of Texas, . . . ." (*Id.*). This is enough information to apprise Castillo of the charges against her and to allow her to prepare a competent defense. As such, Castillo's Motion is denied as to Counts 4–7.

### E. COUNT 8

Finally, Count 8 of the Indictment charges Castillo with engaging in a pattern or practice of hiring or continuing the employment of unauthorized aliens in the United States in violation of 8 U.S.C. §§ 1324a(a)(1)(A), (a)(2), and (f)(1). (Dkt. No. 82 at 5–6). Castillo argues that this count is insufficiently specific and fails to provide fair notice because it (1) does not identify the allegedly unauthorized employees; (2) does not allege how Castillo had knowledge of their unauthorized status; and (3) does not allege how, when, or by what means the alleged pattern and practice of hiring and employment occurred. (Dkt. No. 95 at 7). Section 1324a(f)(1) imposes criminal liability on a person or entity that "engages in a pattern or practice" of violations of Section 1324a(a)(1)(A) or (a)(2). 8 U.S.C. § 1324a(f)(1).

Count 8 alleges that Castillo engaged in such a pattern or practice by hiring or continuing to employ one or more aliens in the United States while knowing that they were unauthorized aliens with respect to that employment. (Dkt. No. 82 at 5–6). It also identifies the approximate time and place of the alleged offense. (*Id.*). These allegations

state the essential elements of the offense and provide sufficient notice of the charge. The Indictment need not identify the allegedly unauthorized employees by name or plead the evidentiary facts showing how Castillo knew of their unauthorized status or how the Government intends to prove that the alleged violations constituted a pattern or practice. *See Richard*, 775 F.3d at 292. Those matters concern the Government's proof, not the sufficiency of the Indictment. Accordingly, Castillo's Motion is denied as to Count 8.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss Indictment, (Dkt. Nos. 95, 97), are **DENIED**.

It is SO ORDERED. Signed

on October 19, 2026.

Drew B Tipton

**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**